## UNITED STATES v. TWO (2) "EXHIBIT ROTARY" COIN OPERATED GAMBLING DEVICES et al.

### Civ. No. 5247.

United States District Court
W. D. Oklahoma.

Aug. 21, 1952.

Harry G. Foreman, Asst. U. S. Atty., Oklahoma City, for plaintiff.

Pierce, Rucker, Mock, Tabor & Duncan, Oklahoma City, for defendants.

WALLACE, District Judge.

A libel of information was filed by the United States to forfeit sixteen coin operated machines which were seized at the Oklahoma State Fair Grounds on or about September 26, 1951. Said machines were transported in interstate commerce, on or about September 21, 1951, from Minneapolis, Minnesota, thence to Topeka, Kansas, thence to Oklahoma City, Oklahoma.

The action was instituted by virtue of the provisions of law contained in Section 7 of Public Law 906, 81st Congress, approved January 2, 1951, 15 U.S.C.A. §§ 1171–1177, an Act to prohibit transportation of gambling devices in interstate and foreign commerce.

Harry B. Julius, claimant filed an answer admitting that the machines were transported in interstate commerce, but denying that the machines were gambling devices within the purview of the law, and denying that the United States was entitled to a decree forfeiting the machines.

The applicable provisions of Title 15 U.S. C.A. are as follows:

"§ 1171.  Definitions

"As used in this chapter—

"(a) The term 'gambling device' means—

"(1) any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or

"(2) any machine or mechanical device designed and manufactured to operate by means of insertion of a coin, token, or similar object and designed and manufactured so that when operated it may deliver, as the result of the application of an element of chance, any money or property; or

"(3) any subassembly or essential part intended to be used in connection with any such machine or mechanical device.

"(b) * * *.

"(c) * * *.

"§ 1172. Transportation of gambling devices as unlawful; exceptions; authority of Federal Trade Commission

"It shall be unlawful knowingly to transport any gambling device to any place in a State, the District of Columbia, or a possession of the United States from any place outside of such State, the District of Columbia, or possession: *Provided,* That this section shall not apply to transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from the provisions of this section, or to a place in any subdivision of a State if the State in which such subdivision is located has enacted a law providing for the exemption of such subdivision from the provisions of this section.

"Nothing in this chapter shall be construed to interfere with or reduce the authority, or the existing interpretations of the authority, of the Federal Trade Commission under the Federal Trade Commission Act.

* * * * * *

"§ 1177. Confiscation of gambling devices and means of transportation; laws governing

"Any gambling device transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violation of the provisions of this chapter shall be seized and forfeited to the United States. * * *"

▇▇ There is no controversy over the fact that the machines in question were transported in interstate commerce. The sole question before the court is whether or not these particular machines are "gambling devices" within the meaning of Section 1171. The legislative history of the Act of January 2, 1951, U.S.Code Congressional Service, 1950, p. 4240 et seq., discloses many of the factors which Congress considered in drafting the wording of the Act.

The purpose behind the legislation apparently was to aid the States in the enforcement of gambling laws and related evils. The Federal Government by prohibiting the transportation of gambling devices in interstate commerce did not intend to substitute Federal law enforcement for that of State and local law enforcement, but Congress did intend to take active steps in a manner wherein the States were powerless to act.

As concerns the definition of "gambling devices", the legislative history discloses that there was considerable testimony and objection to the bill as first drawn due to the broad definition which could easily include coin operated machines which are used purely and solely for amusement or to dispense goods of value for the coins so inserted. It was pointed out by the representative of the Attorney General that it was not the intention of the Department of Justice to include such machines within the provisions of the bill.

On page 4245 of the Legislative History, following the testimony of the Attorney General's representative as aforementioned, it is stated:

* * * * * *

"In view of this testimony and because of its intention to exclude pinball machines and similar amusement machines as well as certain machines and devices commonly used, for instance, at carnivals and livestock shows, your committee decided to adopt a definition of gambling device different from the one contained in the Senate bill. Gambling device is defined by the committee amendment as: * * *."

then the wording which followed is exactly as adopted in the final draft of the law as passed by Congress.

Title 21, section 964 et seq., of the Oklahoma Statutes Annotated contains the law in Oklahoma pertaining to gambling devices. Section 964 is similar in import to the definition of gambling device as defined in 15 U.S.C.A. § 1171, with the exception that the Oklahoma law uses wording to the effect that "such person will stand to win or lose" in place of the Federal law

which uses wording to the effect that "which a person may become entitled to receive". In both cases it is apparent that where there is an element of chance that the person so operating the machine *may* or *may not* receive value for his money, either in property or money, and the device is not solely for amusement, then it is a "gambling device".

This court does not attempt to lay down any hard and fast rule for determining whether or not any particular type of coin operated machines are or are not gambling devices, since it depends upon the particular machine and the purpose and design for which it was intended and manufactured. It is sufficient to say that the machines here involved are operated by the insertion of a coin, that the return of property depends both upon an element of skill and an element of chance, that the operator may or may not get a return for his money, and that although there may be some amusement in the operation of the machines they were purposely designed not for amusement solely but to attract the operator by the possibility of a "prize" or "reward".

Although the court cannot with conviction say that the disposition of the machines here involved will have any great effect upon organized crime, the fact still remains that the machines are "gambling devices" within the meaning not only of the Federal law, but of the Oklahoma law as well. The sixteen coin operated devices will be forfeited to the United States as prayed for in the libel of information.